David H. Bernstein (dhbernstein@debevoise.com)
Jyotin Hamid (jhamid@debevoise.com)
Charles W. Baxter (cwbaxter@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696

*Attorneys for Plaintiff KIND LLC*

ECF CASE



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

KIND LLC,

        Plaintiff,

        -against-

CLIF BAR & COMPANY,

        Defendant.

------------------------------------------------------- x

:
14 Civ. _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

      KIND LLC ("KIND"), by its attorneys, Debevoise & Plimpton LLP, for its complaint against Clif Bar & Company ("Clif"), alleges as follows:

### INTRODUCTION

      1.     This is an action for trade dress infringement, deceptive acts and practices, unfair competition, and related claims against Clif's new MOJO snack bars. After years of the MOJO bars' failure to effectively compete against the market-leading KIND bars, Clif has introduced new MOJO bar formulations and redesigned their packaging to deliberately mimic the unique elements of the distinctive KIND trade dress. Because these new bars will inevitably confuse consumers, KIND has no choice but to seek

immediate injunctive relief against the imminent launch of these deceptively-designed products.

2.     When KIND bars entered the market a decade ago, they transformed the nutritional snack bar category by using simple, whole ingredients the consumer could "see and pronounce."  This was a revolutionary change; most other bars at the time were made from unrecognizable and unpronounceable ingredients that were extruded into brown globs.  To emphasize KIND's use of simple, whole ingredients and the high nutritional quality of its bars, as well as to create a distinctive, sleek, modern impression on store shelves, KIND designed an innovative and distinctive trade dress which prominently featured a large rectangular window through which its visually-inviting, delicious-looking bars could be seen.

3.     For the past decade, Clif, a giant in the nutrition bar category, has offered its MOJO line in direct competition with KIND bars.  Over this period, due to the quality of KIND's product and its extensive and innovative marketing efforts, KIND bars' growth has been exponential.  Meanwhile, Clif has watched its MOJO bars consistently lose market share.  In an apparent reaction to this consistent poor performance, rather than develop an innovative product or marketing strategy, Clif has decided instead to mimic the distinctive trade dress of KIND bars in an attempt to usurp KIND's hard-earned goodwill and confuse the consuming public.



4.      As shown above, the new MOJO trade dress mimics several key elements of the unique and distinctive KIND trade dress, including (1) packaging with a transparent, rectangular front panel revealing a large portion of the bar itself; (2) a horizontal stripe bisecting the transparent front panel containing the flavor of the bar in text; (3) a text description of the product line (e.g. "Fruit & Nut," "Plus," or "Nuts & Spices") in line with the horizontal stripe bisecting the transparent front panel; (4) a vertical black band, offset to the side of the package, containing a bulleted list of many of the bar's key healthful attributes; (5) opaque vertical bands, or end caps, at either edge of the product package; and (6) a 40g size, in a slender shape.  The overall impression conveyed by the new MOJO trade dress is confusingly similar to that of KIND.

5.      In designing the new MOJO bar trade dress, Clif radically deviated from the trade dress used for its other products, including its flagship Clif Bar product, shown on the right.  In addition, the new MOJO trade dress reflects a new and dramatic leap over the line in




what appears to have been a calculated progression of incremental changes, designed

3

each time to get closer and closer to the trade dress of KIND bars and farther and farther from the package design elements that would associate the product with the Clif brand (see the evolution of the MOJO trade dress from left to right, below).

   

Over these iterations, Clif has abandoned the opaque paper wrapper it has used on all of its other products, abandoned use of the rock-climbing figure that is a distinctive marker of the Clif brand, abandoned the arched half-moon motif, and even downplayed the Clif name (which has become smaller and less prominent with each iteration of the MOJO packaging). The last step of this progression is strikingly similar to KIND's trade dress.

6. The confluence of similarities between the KIND Trade Dress and Clif's latest MOJO trade dress simply cannot be coincidence, and instead powerfully suggests a bad faith intent to trade on KIND's hard-earned good will.

7. Clif's unlawful conduct is likely to create consumer confusion which will cause serious and irreparable harm to KIND. This conduct, if not enjoined, could eviscerate the goodwill KIND has spent years carefully cultivating for its brand.

## THE PARTIES

8.     KIND is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 8 West 38th Street, New York, New York 10018.

9.     Clif is a corporation organized and existing under the laws of the State of California with its principal place of business at 1451 66th Street, Emeryville, California 94608.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  This Court also has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and because the amount in controversy exceeds $75,000.

11.     This Court has personal jurisdiction over Defendant pursuant to N.Y. Civ. Prac. L. & R. § 302(a).  Defendant is regularly soliciting business and has transacted business in the State of New York and in this District through its marketing and product displays on its social media websites, its sale of its products on a nationwide basis including extensive sales throughout the State of New York and in this District, and its sale of product through its website.  Defendant derives substantial revenue from interstate commerce.  In addition, through its imminent activities, Defendant will wrongfully cause injury to KIND in the State of New York and in this District, such injury being reasonably foreseeable.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because plaintiff resides in this district under 28 U.S.C. § 1391(c), and because Defendant conducts business in this district.

## KIND BARS AND THEIR TRADE DRESS

13.     KIND is a market leader in the nutritional snack bar category and is the number one brand in the healthy snack bar segment within the nutritional snack bar category.  KIND's Fruit & Nut bars transformed the nutritional snack bar category when they were launched a decade ago.  Unlike most other leading nutritional snack bars, KIND's healthy snack bars are made from all-natural, nutritionally rich "ingredients you can see and pronounce," a branding proposition KIND registered as a trademark (Federal Trademark Registration No. 3,634,183).  These include ingredients such as whole nuts, dried fruits and honey.

14.     KIND designed a trade dress for its bars that would resonate with the core brand proposition (simple, whole ingredients you can see and pronounce) and which would convey a distinctive, sleek, and modern impression on store shelves.  This distinctive trade dress includes: (1) packaging with a transparent, rectangular front panel through which a large portion of the bar itself can be seen; (2) a horizontal stripe bisecting the transparent front panel and containing the flavor of the bar in text; (3) a text description of the product line (e.g. "Fruit & Nut," "Plus," or "Nuts & Spices") in line with the horizontal stripe bisecting the transparent front panel; (4) a vertical black band, offset to the side of the package, containing a bulleted list of many of the bar's key

healthful attributes; (5) opaque vertical bands, or end caps, at either edge of the product package; and (6) a 40g size, in a slender shape.

15.     Since the introduction of its Fruit & Nut bars a decade ago, KIND has introduced two additional healthy snack bar lines: KIND Nuts & Spices and KIND Plus. These three healthy snack bar lines are comprised of bars in 22 flavors, all of which utilize the distinctive KIND trade dress.  Since its inception, KIND has sold nearly 500 million healthy snack bars in the United States.

16.     KIND owns Federal Trademark Registration No. 3,882,221, covering elements of the KIND trade dress, for "healthy snacks, namely, nut and seed based snack bars; processed fruit-and-nut-based food bars, nut based snack food bars, fruit based snack food bars also containing nuts, grains, cereals and dried fruit."  KIND also owns Federal Trademark Registration No. 4,097,493, covering elements of the KIND trade dress, for, inter alia, "nutrition bars, namely, nut and seed based snack bars; processed fruit-and-nut-based food bars, nut based snack food bars, fruit based snack food bars also containing nuts, grains, cereals and dried fruit."  Copies of these registrations are attached hereto as Exhibit A.

17.     The success of KIND bars stems not only from the high quality of the products, but also from the distinctive KIND trade dress.  Indeed, the KIND trade dress is among the most significant ways in which consumers identify the brand on shelves, and is thus among KIND's most valuable intellectual property.

### KIND'S ADVERTISING AND MARKETING

18.     KIND has expended considerable resources advertising and promoting its products using the distinctive KIND trade dress.  The KIND trade dress is featured prominently in advertisements, on KIND's  website, in experiential marketing programs, and in point-of-sale promotional materials.  KIND's extensive advertising and promotion, featuring the KIND trade dress, has supported the explosive growth of the KIND brand. Since 2011 these programs have generated more than 1 billion media impressions. Additionally, KIND has engaged in widespread experiential marketing efforts, distributing more than 12.5 million KIND bars as samples.  In 2004, KIND spent approximately $300,000 advertising KIND bars including sales promotion and trade spending.  This figure rose to more than $40 million in 2013.  Altogether, since 2004, KIND has spent approximately $100 million marketing its healthy snack bars.

19.     KIND bars have received multiple awards, including Best New Product at the Natural Products Expo in October 2008, Best Breakfast Bar from *Men's Health*, Best Bar from *Prevention* in 2011, Healthy Food Awards – Editor's Pick from *Fitness Magazine*, Best Convenience Food from *Good Housekeeping*, and many others.  KIND bars also have received extensive unsolicited media coverage in major publications such as *TIME*, *BusinessWeek*, *Food & Wine*, *Oprah's O Magazine*, *Good Housekeeping*, *Ladies Home Journal*, *Progressive Grocer*, *Health Magazine*, and *The New York Times*. KIND bars have been featured on national television programs such as The Today Show, Good Morning America, and the Rachel Ray Show.  Through these mediums, KIND bars have received in excess of 3.5 billion earned media impressions during the past four years.

## SALES OF KIND BARS

20.     In 2009 KIND held a 19.9% share of the healthy snack bar segment while LÄRABAR held 27.4% and Clif MOJO held 14.8%.  As a result of KIND's sales efforts and the quality of its products, today KIND bars hold the largest market share of the healthy snack bar segment, making up 51.1% of the segment, followed by LÄRABAR at 28.9% and Clif MOJO at 7.8%.  During this period, Clif MOJO bars have lost nearly half of their market share.

21.     KIND bars are the fastest growing product in the nutritional snack bar category and can be found in more than 80,000 locations.  During the 52 weeks ending on November 23, 2013, sales of KIND bars enjoyed a 91% growth rate while LÄRABAR sales grew by 14% and Clif's MOJO bars saw a 2% decline in sales.  Fourteen of the top 15 performing products in the healthy snack bar segment are occupied by KIND products, with 14th place held by a LÄRABAR product and none held by a MOJO product.  Five of the top 10 performing products in the entire nutritional snack bar category, including the number one performing product (KIND's Dark Chocolate Nuts & Sea Salt Bar), are KIND products.

22.     Growth in the sales of KIND bars has led to significant revenue for KIND. In 2013 alone, KIND sold more than 200 million KIND bars, with retail sales in excess of $300 million.  Over the life of the brand, KIND has sold more than 450 million KIND bars, with aggregate retail sales well in excess of $600 million.

### DEFENDANT'S WRONGFUL CONDUCT

23.     Clif has been a leader in the snack bar category since the 1990s.  Its

flagship product is, and has always been, the Clif Bar, which is an energy bar.  Although

Clif has launched other types of snack bars  

over the years – including Clif Kid ZBar

(marketed toward children), LUNA

(marketed toward women), Clif Builder's (a

line of protein bars), Clif Crunch (a line of

granola bars) and Kit's Organic (a line of

fruit and nut bars) – the Clif Bar, on information and belief, remains its best-selling and

most well-known line.

24.     The Clif Bar has a distinctive trade dress, including an opaque paper

wrapper, a rock-climbing figure, and prominent use of the Clif name.  Until recently,

these prominent elements of the Clif Bar trade dress were also used on other types of

snack bars made by Clif.  Aside from the MOJO product, all other Clif products use an

opaque paper wrapper and prominent use of the Clif name, and many have used a

variation of the rock-climbing figure.  For obvious logical reasons, it is common for

companies to use consistent design elements in the trade dress for different lines of

products as a way of identifying the different lines as emanating from the same source.

25.     Approximately ten years ago, Clif introduced its MOJO line of snack bars.

The MOJO line is, of all the Clif lines, the most similar to KIND bars, and competes with

KIND bars in the healthy snack bar segment.  Until now, though, the trade dress for

MOJO bars has not mimicked the KIND trade dress and, instead, has shared elements reminiscent of Clif's other products.

26.     On information and belief, Clif is preparing to launch imminently a re-formulated MOJO line in a new trade dress.  Not only has the product itself been re-formulated to be more similar to KIND bars, but the new trade dress appears to have directly copied several key elements of the unique and distinctive KIND trade dress including (1) packaging with a transparent, rectangular front panel revealing a large portion of the bar itself; (2) a horizontal stripe bisecting the transparent front panel containing the flavor of the bar in text; (3) a text description of the product line (e.g. "Fruit & Nut," "Plus," or "Nuts & Spices") in line with the horizontal stripe bisecting the transparent front panel; (4) a vertical black band, offset to the side of the package, containing a bulleted list of many of the bar's key healthful attributes; (5) opaque vertical bands, or end caps, at either edge of the product package; and (6) a 40g size, in a slender shape.



27.     The similarities between the respective trade dresses for the two brands is simply too pronounced to have occurred by coincidence.

28. First, aside from the MOJO products, all other Clif products use entirely opaque packaging. Similarly, no other Clif product has packaging utilizing a horizontal



contrasting band bisecting the front panel, or an offset black band containing a bulleted list of product characteristics. Finally, no other Clif-branded product – including the current generation of Clif MOJO products – is produced in Clif MOJO's newly adopted 40g size and slender shape.

29. Focusing on the evolution of Clif's MOJO trade dress even more dramatically reveals Clif's intent to copy the KIND trade dress and to trade on the success of the KIND brand. It appears that, as KIND bars gained in popularity, Clif has changed the trade dress for its MOJO bars to get closer and closer to the look of the KIND brand and farther and farther away from the traditional look of the Clif brand. The

first generation MOJO product was marketed in a trade dress that maintained a tight relationship with Clif's original product, utilizing the rock-climbing figure and opaque, paper packaging characteristic of the original Clif Bar product.  In its second generation MOJO product, Clif moved incrementally toward KIND by copying KIND's use of a clear panel to allow consumers to see the product before purchasing it.  This trade dress eliminated the rock-climbing figure and the paper packaging that might help consumers associate the MOJO product with Clif's core product.  In the third generation, Clif incorporated a larger transparent panel, and more horizontal block or band elements, including a black block portion containing bar attributes.  This gradual abandonment of elements characteristic of the Clif brand, while simultaneously incorporating elements characteristic of the KIND brand, are clear evidence of Clif's longstanding intent to associate its MOJO products with the successful and growing KIND brand.  Even the Clif name has become less and less prominent (see the evolution of the MOJO trade dress from left to right, below).

   

13

30.     The new MOJO trade dress includes several telling changes from older versions of the product that are reflective of Clif's intent, and with these changes, Clif has now crossed over the line.  The arched, transparent window is now a large, rectangular panel, just like KIND.  The small black block containing product attributes is now a full black band with product attributes listed in bullet form, just like KIND.  The product attributes featured on the MOJO trade dress now include "Gluten Free," just like KIND. The flavor name originally listed in the corner is now listed on a horizontal band bisecting the transparent panel, just like KIND.  The solid wrapper with a transparent cut-out is now a transparent wrapper with opaque end caps, just like KIND.   The phrase "Sweet and Salty" found on former MOJO packaging is now, on several packages, the phrase "Fruit & Nut," just like KIND.  Flavor names like "Mountain Mix," are now straight-forward names that describe each bar's ingredient combinations, such as "Cranberry Almond," just like KIND.  The MOJO product's 45g wide shape is now a 40g slender shape, just like KIND (to the gram).  Finally, the Clif name has shrunk yet again and is now not prominent at all.

## LIKELIHOOD OF CONFUSION

31.     Due to the striking similarity between the KIND bar and MOJO bar trade dresses, there is a high likelihood that consumers will buy the MOJO bar products under the mistaken belief that they come from, are manufactured by, sponsored by, or are associated or affiliated with, KIND.

32.     The new MOJO bars will compete directly with KIND products in the exact same channels of commerce.  MOJO bars are currently sold side by side with

KIND bars in the snack, nutrition and energy bar sections of health food stores, grocery stores, convenience stores, gourmet shops and other outlets where KIND bars are sold. There is no reason to believe that this will change when the new trade dress is launched.

33.     Indeed, Clif clearly intends for its new formulation of MOJO bars to compete directly with KIND bars; so directly, in fact, as to now largely mimic popular KIND ingredient combinations (*see* images on following page).  To infer such an intent, one need look no further than Clif's new and shamefully-derivative flavor combination, "Dark Chocolate Almond Sea Salt," obviously a direct copy of KIND's best-selling "Dark Chocolate Nuts & Sea Salt" bar.  Indeed, all of Clif's new MOJO bars copy a successful KIND bar flavor:

| **KIND Flavor** | **New Clif MOJO Flavor** |
| --- | --- |
| Dark Chocolate Cherry Cashew | Dark Chocolate Cherry Almond |
| Blueberry Pecan | Wild Blueberry Almond |
| Almond & Coconut | Coconut Almond Peanut |
| Cranberry Almond | Cranberry Almond |
| Dark Chocolate Nuts & Sea Salt | Dark Chocolate Almond Sea Salt |

Similarly, Clif's MOJO bars prominently contain the new claim that they are "Gluten Free," long a core distinguishing attribute of KIND bars, pulling the new MOJO bars into even more direct competition for KIND customers.



34. Relatively low-cost snack items, including KIND bars and MOJO bars (about $2 per bar), are often impulse purchases, placed near a store's checkout counter or at the end of aisles in grocery stores.  In that setting, deceptively similar trade dress is likely to cause confusion.  Confusion is further likely because consumers of these products are more likely to rely on signals of familiarity contained in a product's trade dress and are unlikely to exercise a great deal of care to ensure the source of the product before making a purchase, risks that are particularly acute where a competitor seeks to mimic so many of the signals consumers use as shortcuts in identifying a favored brand.

35. Finally, as a major, established player in the snack bar market, Clif will almost certainly secure a broad distribution for its new MOJO product, with the potential that some consumers may encounter Clif's infringing product before having a chance to encounter the KIND product.  Some consumers may therefore incorrectly perceive KIND

16

bars as the knock-off product if they encounter them after having seen MOJO bars in their deceptively similar packaging.

## IMMINENT IRREPARABLE HARM

36.     Clif has adopted a trade dress for its MOJO bar products that is likely to confuse consumers into thinking they are buying a product that comes from or is associated with KIND as the maker of KIND bars.

37.     Although, on information and belief, the product is not yet available for retail purchase by consumers, the product was apparently shown at the 2014 Convenience Retailing University, an industry trade show occurring in Arizona from January 28-30, 2014 (see Exhibit B).  The new trade dress has also been reported publicly in at least one independent online media outlet, Glamour.com, which included a press photo of the new MOJO bars in an article published on Tuesday, January 28, 2014 (see Exhibit C). Finally, the website, buttermilklipstick.com, a weblog that claims to be sponsored by Clif, also recently included images of the new product along with a note that it would be "available February 2014" (see Exhibit D).

38.     In addition, Clif is registered as an exhibitor at the 2014 Natural Products Expo West, the leading trade show in the natural, organic and healthy products industry. This platform is frequently used by industry participants to launch new products, and indeed KIND has launched new products at prior Expos.  Given Clif's activities, it would be very surprising if it did not publicly launch its new MOJO product before March 6, 2014, when the 2014 Natural Products Expo West begins.

39.     If Defendant publicly launches its MOJO bar products in the new trade dress, KIND will suffer severe irreparable harm.  Many consumers will mistakenly believe they are buying a KIND product when they are actually buying a Clif product. The goodwill that KIND has spent considerable time, effort and resources to cultivate will be eroded.  Existing KIND customers may be disappointed with the quality of products that they mistakenly believe are made by KIND, and therefore may turn away from KIND products.  Potential new customers, mistakenly thinking they are buying KIND products, may also be disappointed and decide not to buy KIND bars in the future. Finally, some customers who encounter the new MOJO products before having encountered KIND bars, may mistakenly perceive KIND bars to be a knock-off product.

40.     Exacerbating these harms is the fact that, as a major, established player in the snack bar market, Clif has substantial market clout and the immediate ability to flood market channels with its confusingly similar product.  Clif will almost certainly secure a broad distribution for its new MOJO product, with the potential that some consumers may encounter Clif's infringing product before having a chance to encounter the KIND product, which is still experiencing rapid growth, but has yet to achieve Clif's distributional reach.

## <u>COUNT ONE</u>

### (Trade Dress Infringement and False Designation of Origin Under Section 43(a) of the Lanham Act)

41.     KIND repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

24053002v01

42.     As noted above, the new Clif MOJO products, imminently to be released and used in commerce, feature a trade dress that is confusingly similar to the KIND trade dress.

43.     Defendant's acts of trade dress infringement, unless restrained, will cause great and irreparable injury to KIND and to the business and goodwill represented by the KIND trade dress, in an amount that cannot be ascertained at this time, leaving KIND with no adequate remedy at law.

44.     Defendant's deceptive marketing and sales practices in connection with its new MOJO products in their present packaging constitutes false designation of origin and infringement of the KIND trade dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45.     By reason of the foregoing, KIND is entitled to injunctive relief against Defendant, restraining it from any further acts of trade dress infringement, false designation of origin and unfair competition, and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendant's aforesaid acts.

<b><u>COUNT TWO</u></b>

<b>(Trade Dress Infringement Under New York Law)</b>

46.     KIND repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

47.     Defendant's acts, as described above, constitute trade dress infringement under N.Y. Gen. Bus. Law § 360-k.

## COUNT THREE

### (Registered Trade Dress Infringement
### Under Section 32 of the Lanham Act)

48.     KIND repeats and realleges each and every allegation in the foregoing
paragraphs as if fully set forth herein.

49.     The trade dress of KIND bars is federally registered with the United States
Patent and Trademark Office as Trademark Registration No. 3,882,221 (below on the
left) and Registration No. 4,097,493 (below on the right).

 

50.     The trade dress of KIND bars is currently used in commerce, is non-
functional, is inherently distinctive, and also has acquired substantial secondary meaning
in the marketplace.

51.     Clif's new MOJO bar product features a trade dress that is confusingly
similar to the trade dress of KIND bars.  Clif will soon commence selling the product.

52.     Clif's manufacture, distribution, sale and promotion of its new MOJO bar
products thus is likely to cause confusion and mistake and to deceive retailers and
consumers as to the source, origin or sponsorship of these products.  Consumers seeing
MOJO bar products in the marketplace likely will believe that they are sponsored by,
associated with, or otherwise affiliated with KIND or vice versa.

53.     Any confusion stemming from the MOJO bar's confusingly similar trade
dress would cause irreparable injury to both the sales and reputation of KIND as well as

24053002v01

the goodwill developed by KIND bar's trade dress.  The extent of this harm cannot be ascertained at this time, leaving KIND no adequate remedy at law.

54.     As such, Clif's deceptive marketing and sales practices in connection with its new MOJO bar products constitute infringement of the registered KIND bar trade dress in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     By reason of the foregoing, KIND is entitled to injunctive relief against Defendant, restraining it from any further acts of trade dress infringement and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendant's aforesaid acts.

## COUNT FOUR

### (Deceptive Acts and Practices Under New York Law)

56.     KIND repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

57.     The acts of Defendant as described above constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349-50.

## COUNT FIVE

### (Unfair Competition under New York Law)

58.     KIND repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

59.     The acts of Defendant as described above constitute unfair competition in violation of KIND's rights under the New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

## COUNT SIX

### (Trade Dress Dilution under New York Law)

60.     KIND repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

61.     The trade dress of KIND bars is used in commerce, is non-functional, is inherently distinctive, and has acquired substantial secondary meaning in the marketplace.

62.     Defendant's distribution, sale and promotion of products employing the challenged trade dress is likely to dilute and detract from the distinctiveness of the KIND trade dress.

63.     Defendant's acts of trade dress dilution, unless restrained, will cause great and irreparable injury to KIND and to the business and goodwill represented by the KIND trade dress, in an amount that cannot be ascertained at this time, leaving KIND with no adequate remedy at law.

64.     The acts of Defendant as described above constitute trade dress dilution in violation of N.Y. Gen. Bus. Law § 360-l.

### PRAYER FOR RELIEF

WHEREFORE, KIND respectfully prays:

A.     That Defendant and all those in active concert or participation with it (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) be temporarily, preliminarily and then permanently enjoined and restrained from:

22

       i.      manufacturing, distributing, shipping, advertising, marketing, promoting, selling or otherwise offering for sale MOJO bar products in the challenged trade dress or any other trade dress that is confusingly similar to that of KIND bars or any of KIND's other products;

       ii.      representing, by any means whatsoever, that any products manufactured, distributed, advertised, offered or sold by Defendant are KIND's products or vice versa, and from otherwise acting in a way likely to cause confusion, mistake or deception on the part of purchasers or consumers as to the origin or sponsorship of such products; and

      B.      That Defendant and all those in active concert or participation with it (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by its use of the challenged trade dress, including, but not limited to, recalling from any and all channels of distribution any and all infringing products and promotional materials.

      C.      That Defendant account to KIND for its profits and any damages sustained by KIND, to the extent calculable, arising from the foregoing acts of trade dress infringement and dilution, false designation of origin and deceptive acts and practices.

24053002v01

D.      That, in accordance with such accounting, KIND be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

E.      That KIND have and recover its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

F.      That KIND be awarded punitive damages pursuant to the law of the State of New York in view of Defendant's intentional and willful trade dress and trademark infringement and other conduct.

G.      That Defendant deliver up for destruction all infringing products in its possession or control and all means of making the same in accordance with 15 U.S.C. § 1118.

H.      That Defendant file with the Court and serve on counsel for KIND within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendant has complied with any injunction which the Court may enter in this action.

I.      That KIND have such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

KIND demands a trial by jury on all claims as to which a jury trial may be had.

Dated: New York, New York
February 6, 2014

DEBEVOISE & PLIMPTON LLP

By: _____
David H. Bernstein
(dhbernstein@debevoise.com)
Jyotin Hamid
(jhamid@debevoise.com)
Charles W. Baxter
(cwbaxter@debevoise.com)
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

*Attorneys for Plaintiff KIND LLC*

24053002v01