UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

KIND LLC,         :
                        :
        Plaintiff,    :
                        :
      -against-    :    14 Civ. 770 (KMW)
                        :
CLIF BAR & COMPANY,    :
                        :
        Defendant.    :
                        :

-------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION
FOR A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

David H. Bernstein
    (dhbernstein@debevoise.com)
Jyotin Hamid
    (jhamid@debevoise.com)
Charles W. Baxter
    (cwbaxter@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696

New York, New York
February 10, 2014

# TABLES OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 5

I.      KIND Meets the Standard for a Preliminary Injunction Order.............................. 5

II.     KIND Is Likely to Succeed on Its Claim of Trade Dress Infringement. ................ 5

      A.      The KIND Trade Dress Is Distinctive. ......................................................... 7

      B.      There Is a Likelihood of Confusion Between KIND Bars and
              MOJO Bars. ................................................................................................. 9

             1.      The KIND Bar Trade Dress Is Strong and Distinctive. ................ 10

             2.      The New MOJO Bar Trade Dress Is Similar to the KIND
                   Bar Trade Dress. ........................................................................... 11

             3.      The New MOJO Bar Trade Dress Was Developed in Bad
                   Faith. ............................................................................................ 12

             4.      KIND Bars and MOJO Bars Are Situated Identically in the
                   Market. ......................................................................................... 14

             5.      Purchasers of Healthy Snack Bars Are Not Highly Trained
                   or Particularly Sophisticated. ....................................................... 16

             6.      KIND Cannot Control the Quality of MOJO Bars. ...................... 17

             7.      KIND Has Direct Evidence of a Likelihood of Confusion. .......... 17

III.    KIND Is Likely to Suffer Irreparable Harm. ....................................................... 21

IV.     KIND Also Satisfies the Alternate Standard for a Preliminary Injunction. .......... 23

V.      Expedited Discovery Is Appropriate ..................................................................... 24

CONCLUSION ........................................................................................................ 25

## TABLE OF AUTHORITIES

**CASES**

*Andy Warhol Enters., Inc. v. Time Inc.*, 700 F. Supp. 760 (S.D.N.Y. 1988)................................17

*Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, No. 12 Civ. 5423 (HB),
  2014 WL 47465 (S.D.N.Y. Jan. 6, 2014) ..........................................................................9, 22

*Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ 3841 (RWS), 1997 U.S.
  Dist. LEXIS 15957 (S.D.N.Y. July 18, 1997) ........................................................................24

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992)........................6

*Caché, Inc. v. M.Z. Berger & Co.*, No. 99 Civ. 12320 (JGK), 2001 WL 38283
  (S.D.N.Y. Jan. 16, 2001)........................................................................................................18

*Cadbury Beverages v. Cott Corp.*, 73 F.3d 474 (2d Cir. 1996)....................................................17

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217 (S.D.N.Y.
  2004) ................................................................................................................................8, 9

*Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615 (2d Cir. 2008)....................................6, 8

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)............................................................21

*Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399 (RWS), 2004
  WL 602295 (S.D.N.Y. Mar. 26, 2004), *rev'd on other grounds*, 399 F.3d 462
  (2d Cir. 2005)........................................................................................................................19

*EnergyBrands Inc. v. Beverage Mktg. USA, Inc.*, No. 02 Civ. 3227 (JSR), 2002
  WL 826814 (S.D.N.Y. May 1, 2002) ................................................................................5, 18

*Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500 (5th Cir. 1980)..........................20

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ..............................21

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir. 1997) ................5, 10, 23

*Goya Foods, Inc. v. Condal Distribs., Inc.*, 732 F. Supp. 453 (S.D.N.Y. 1990) ..........................19

*Gross v. Bare Escentuals Beauty, Inc.*, 641 F. Supp. 2d 175 (S.D.N.Y. 2008)............................11

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F.
  Supp. 707 (S.D.N.Y. 1973), *aff'd.* 523 F.2d 1331 (2d Cir. 1975) ..........................................19

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir. 1988) ..........................................6, 17, 21

*James Burrough, Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976) ....................20

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337 (2d Cir. 1999) ....................................................................................................................8

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986)......................11

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2d Cir. 2006) ........................23

*Majestic Drug Co. v. Olla Beauty Supply, Inc.*, No. 97 Civ. 0046 (LAP), 1997 WL 37955 (S.D.N.Y. Jan. 31, 1997)....................................................................10, 12, 16

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. 1987)................................14

*Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003) ..........................................................16

*Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397 (8th Cir. 1987)..................................................20

*Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208 (2d Cir.1999) .....................................................16

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114 (2d Cir. 2001) ..........................6

*P3 Int'l v. Weitech, Inc.*, No. 99 Civ. 5941 (KMW), 1999 WL 1020249.....................................13

*Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577 (2d Cir. 1993) .....................................................................................5, 6, 7, 10, 11, 12, 16

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209 (2d Cir. 2003).......................................16

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ. 10175 (JSM), 2001 WL 170672 (S.D.N.Y. Feb. 21, 2001) .............................................................................10

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ............................9, 10, 18

*Quaker Oats Co. v. Mel Appel Enters., Inc.*, 703 F. Supp. 1054 (S.D.N.Y. 1989) ......................22

*RJR Foods, Inc. v. White Rock Corp.*, No. 77 Civ. 2329, 1978 U.S. Dist. LEXIS 15080 (S.D.N.Y. Oct. 6, 1978), *aff'd.* 603 F.2d 1058 (2d Cir. 1979)......................19

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ..........................................................................21

*Time Inc. Magazine Co. v. Globe Commc'ns Corp.*, 712 F. Supp. 1103 (S.D.N.Y. 1989) ...................................................................................................................16

*Toy Mfrs. of Am., Inc. v. Helmsley-Spear, Inc.*, 960 F. Supp. 673 (S.D.N.Y. 1997) ....................14

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ......................................................6, 7

*U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 511 F. App'x 81 (2d Cir. 2013) .......................21, 22

*U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) .............18, 24

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009) ........................................................5

**STATUTES**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ..................................................................5

**OTHER AUTHORITIES**

David H. Bernstein & Andrew Gilden, *No Trolls Barred: Trademark Injunctions
   after eBay*, Trademark Rep. 1037 (2009) ..............................................................................21

Plaintiff KIND LLC ("KIND") respectfully submits this memorandum of law in support of its application for expedited discovery and a preliminary injunction against defendant Clif Bar & Company ("Clif").

## PRELIMINARY STATEMENT

For years, Clif's MOJO line of snack bars have lost market share to the segment-leading KIND brand of healthy snack bars. After years of the MOJO bars' failure to effectively compete against the market-leading KIND bars, Clif has introduced new MOJO bar formulations and redesigned their packaging to deliberately mimic the unique elements of the distinctive KIND trade dress. Because these new bars will inevitably confuse consumers (as demonstrated by the results of a scientific consumer perception survey), KIND hereby moves for immediate injunctive relief to prevent the irreparable harm to the KIND brand that will result if Clif is permitted to continue its launch of these new MOJO bars given that Clif will be able to flood trade channels with its deceptively-designed products using its considerable market clout and established distribution network.

When KIND bars entered the market a decade ago, they transformed the nutritional snack bar category by using simple, whole ingredients the consumer could "see and pronounce." This was a revolutionary change; most other bars at the time were made from unrecognizable and unpronounceable ingredients that were extruded into brown globs. To emphasize KIND's use of simple, whole ingredients and the high nutritional quality of its bars, as well as to create a distinctive, sleek, modern impression on store shelves, KIND designed an innovative and distinctive trade dress that

prominently featured a large rectangular window through which its visually-inviting, delicious-looking bars could be seen.

For the past decade, Clif, a giant in the nutrition bar category, has offered its MOJO line in direct competition with KIND bars.  Over this period, due to the quality of KIND's product and its extensive and innovative marketing efforts, KIND bars' growth has been exponential.  Meanwhile, Clif has watched its MOJO bars consistently lose market share.  In an apparent reaction to this consistent poor performance, rather than develop an innovative product or marketing strategy, Clif has decided instead to mimic the distinctive trade dress of KIND bars in an attempt to usurp KIND's hard-earned goodwill and confuse the consuming public.



As shown above, the new MOJO trade dress mimics several key elements of the unique and distinctive KIND trade dress, including (1) packaging with a transparent, rectangular front panel revealing a large portion of the bar itself; (2) a horizontal stripe bisecting the transparent front panel containing the flavor of the bar in text; (3) a text description of the product line (e.g. "Fruit & Nut," "Plus," or "Nuts & Spices") in line with the horizontal stripe bisecting the transparent front panel; (4) a vertical black band, offset to the side of

the package, containing a bulleted list of many of the bar's key healthful attributes;
(5) opaque vertical bands, or end caps, at either edge of the product package; and (6) a
40g size, in a slender shape.  The overall impression conveyed by the new MOJO trade
dress is confusingly similar to that of KIND.

  In designing the new MOJO bar trade dress, Clif radically deviated from the trade



dress used for its other products, including
its flagship Clif Bar product, shown on the
right.  In addition, the new MOJO trade
dress reflects a new and dramatic leap over
the line in what appears to have been a
calculated progression of incremental

changes, designed each time to get closer and closer to the trade dress of KIND bars and
farther and farther from the package design elements that would associate the product
with the Clif brand (see the evolution of the MOJO trade dress from left to right, below).



Over these iterations, Clif has abandoned the opaque paper wrapper it has used on all of its other products, abandoned use of the rock-climbing figure that is a distinctive marker of the Clif brand, abandoned the arched half-moon motif, and even downplayed the Clif name (which has become smaller and less prominent with each iteration of the MOJO packaging).  The last step of this progression is strikingly similar to KIND's trade dress.

The confluence of similarities between the KIND trade dress and Clif's latest MOJO trade dress simply cannot be coincidence, and instead powerfully suggests a bad faith intent to trade on KIND's hard-earned goodwill.

Clif's unlawful conduct is likely to create consumer confusion.  In fact, a scientific, controlled consumer perception survey, following a methodology which has been accepted by this Court on numerous occasions to support the entry of provisional injunctive relief, demonstrates that an appreciable percentage of relevant consumers have the mistaken belief that Clif's MOJO bars in their new trade dress are made by, or are affiliated with, the KIND brand.  See pages 17 - 21, below, and the accompanying Declaration of George Mantis.

Clif's infringement of KIND's trade dress will cause drastic and irreparable harm to the KIND brand.  KIND has spent a decade painstakingly building its reputation and distribution, and is now reaping the fruits of its labors.  Clif's use of so similar a trade dress – with which it will be able to instantly flood the market given its well established national distribution network – will overwhelm KIND and will confuse consumers as to whether MOJO bars are KIND bars, or come from the same source.  This conduct by an established competitor is every small company's worst nightmare.

For these reasons, KIND respectfully requests that the Court enter a preliminary injunction to prevent irreparable harm to the KIND brand and trade dress.[1]

## ARGUMENT

I.    **KIND Meets the Standard for a Preliminary Injunction Order.**

A plaintiff is entitled to a preliminary injunction upon a showing of: (1) likelihood of irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) the existence of serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the plaintiff's favor.  *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009).  Courts in this district have not hesitated to grant provisional relief when a party's trade dress is infringed by a competitor.  *See, e.g.*, *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1007 (2d Cir. 1997) (preliminary injunction against toy that infringed plaintiff's trade dress); *EnergyBrands Inc. v. Beverage Mktg. USA, Inc.*, No. 02 Civ. 3227 (JSR), 2002 WL 826814, at *3 (S.D.N.Y. May 1, 2002) (granting a TRO against infringing beverage trade dress based, in part, on survey by Mr. Mantis).

II.    **KIND Is Likely to Succeed on Its Claim of Trade Dress Infringement.**

It is well established that the trade dress for product packaging – its "total image" – is protectible under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  *See Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 582-84 (2d Cir. 1993) (protecting trade dress of ouzo bottle based on its overall appearance); *see also*

---

[1]    In light of the expedited nature of this application, KIND respectfully refers the Court to the accompanying declarations for the relevant factual background.

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001) ("A product's trade dress encompasses the overall design and appearance that make the product identifiable to consumers."); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir. 1992) ("In examining trade dress the focus is on the *entire* look of the product or packaging.").  That image may be created by, among other things, geometric shapes, size, colors, symbols, lettering styles, graphics and/or advertising materials – in sum, by anything the purchasing public has or may come to associate with a particular source.  *See generally Paddington*, 996 F.2d at 582-84.

Although purely functional elements of a product's appearance cannot be trademarked independently, *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992), the arrangement of elements used to create an overall trade dress, including functional elements, is protected from infringement, *see Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 621 (2d Cir. 2008) (stating that it is "improper for defendants to break the trade dress down into specific elements and call them functional, because plaintiffs' claim is that the combination and arrangement of those design elements comprise the trade dress at issue").

To protect the trade dress of its product, a plaintiff need only show that it "is distinctive and . . . that a likelihood of confusion exists between its product and the defendant's." *Paddington*, 996 F.2d at 582.  A showing of a likelihood of confusion establishes, as a matter of law, a likelihood of success on the merits.  *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988).  In this case, KIND can easily show both distinctiveness and likelihood of confusion.

A.      **The KIND Trade Dress Is Distinctive.**

Trade dress is distinctive, and protectible, when it is "capable of identifying a particular source of the product." *Two Pesos*, 505 U.S. at 771.  Distinctiveness is determined by considering the "total impression" made by the trade dress, rather than its individual elements.  *Paddington*, 996 F.2d at 584.  Because "the choices that a producer has for packaging its products are . . . almost unlimited, typically a trade dress will be arbitrary or fanciful and thus inherently distinctive." *Id*. at 583.  The trade dress of a product will be deemed nondistinctive only "where it is the custom of an industry to package products in a particular manner," such as "packaging lime-flavored soda in green twelve-ounce cans . . . ." *Id*.  No such custom exists in the snack bar industry, and KIND's trade dress is unique, arbitrary and inherently distinctive.

Though not necessary to receive trade dress protection under the law, KIND has registered elements of its trade dress with the United States Patent and Trademark Office.  As shown below, Reg. Nos. 3,882,221 (left) and 4,097,493 (right) cover many of the

 

elements of KIND bar packaging that are at issue in this case, including the horizontal line running across the transparent, rectangular panel through which the product can be seen, the vertical black band offset to one side of the packaging, a text description of a product line ("Fruit + Nut") in line with the horizontal stripe bisecting the transparent front panel, and opaque end caps contrasting with the transparent front panel.

These registrations constitute *prima facie* evidence of the validity of the registered aspects of the trade dress and of the distinctiveness of that trade dress. *See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (*i.e.,* protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce.").

In addition to being inherently distinctive and enjoying the *prima facie* evidence of distinctiveness afforded by the registrations, the trade dress used by KIND for its bars is also distinctive based on other factors deemed relevant by the Second Circuit. *See Cartier*, 294 F. App'x at 618. Since the product's launch, all KIND bars have shared several key elements of trade dress that are now indicative of the KIND brand, including (1) packaging with a transparent, rectangular front panel revealing a large portion of the bar itself; (2) a horizontal stripe bisecting the transparent front panel containing the flavor of the bar in text; (3) a text description of the product line (e.g. "Fruit & Nut," "Plus," or "Nuts & Spices") in line with the horizontal stripe bisecting the transparent front panel; (4) a vertical black band, offset to the side of the package, containing a bulleted list of many of the bar's key healthful attributes; (5) opaque vertical bands, or end caps, at either edge of the product package; and (6) a 40g size, in a slender shape. *See* accompanying Declaration of Daniel Lubetzky ("Lubetzky Decl.") ¶ 3. Evidencing the secondary meaning in these elements, KIND bars, in their current, distinctive trade dress, have been on the market continuously for the past decade. *See Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 243 (S.D.N.Y. 2004) (evidence of secondary

meaning exists where trade dress has been used for eight years). During this period, KIND has sold more than $600 million worth of KIND bars (at estimated retail pricing). Lubetzky Decl. ¶ 16; *cf. Four Star Jewelry Creations*, 348 F. Supp. 2d at 242 (considerable sales success of one of four trade dresses at issue "beyond question" where sales over 15-year period reached $102 million). Since introducing its bars, KIND has spent more than $100 million marketing and advertising KIND bars, spending more than $40 million in 2013 alone. Lubetzky Decl. ¶ 13; *cf. Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, No. 12 Civ. 5423 (HB), 2014 WL 47465, at *8 (S.D.N.Y. Jan. 6, 2014) (evidence of secondary meaning exists where advertising expenditures over three-year period were less than $900,000). KIND bars and the KIND brand have received extensive unsolicited media coverage, including dozens of industry and popular media accolades. Lubetzky Decl. ¶ 17. All of these factors indicate that the KIND trade dress has gained distinctiveness in the marketplace.

> B.   **There Is a Likelihood of Confusion Between KIND Bars and MOJO Bars.**

Likelihood of confusion is assessed in this Circuit according to eight factors: (<u>1</u>) the strength of the plaintiff's trade dress; (<u>2</u>) the similarity between the parties' trade dress; (<u>3</u>) whether the defendant's trade dress was developed in bad faith; (<u>4</u>) the competitive proximity of the parties' products in the marketplace; (<u>5</u>) the likelihood that the senior user will bridge the gap, if any, between the products; (<u>6</u>) the sophistication of the relevant consumer group; (<u>7</u>) the quality of the defendant's product; and (<u>8</u>) evidence of actual confusion. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d

Cir. 1961).  In applying these factors, "the test of confusion is not whether the products can be differentiated" when compared side-by-side, but rather, "whether they create the same general overall impression such that a consumer who has seen" the plaintiff's product would, "upon later seeing the [defendant's product] in its trade dress alone, be confused." *Fun-Damental Too*, 111 F.3d at 1004.

   1. *The KIND Bar Trade Dress Is Strong and Distinctive.*

  The strength of the mark is its "distinctiveness, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Paddington*, 996 F.2d at 585 (internal alterations omitted).  The inherent distinctiveness of KIND's trade dress is sufficient to establish a likelihood of confusion under this factor of the *Polaroid* test.  *See Paddington*, 996 F.2d at 585.  Moreover, a defendant's "intentional copying of the plaintiff's trade dress raises a presumption that the imitated trade dress has secondary meaning." *Majestic Drug Co. v. Olla Beauty Supply, Inc.*, No. 97 Civ. 0046 (LAP), 1997 WL 37955, at *7 (S.D.N.Y. Jan. 31, 1997); *see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ. 10175 (JSM), 2001 WL 170672, at *10 (S.D.N.Y. Feb. 21, 2001) ("Defendants' introduction of a similar label further supports the strength of Plaintiff's mark.").

  Furthermore, the KIND trade dress has acquired secondary meaning through the marketing and advertising KIND has invested in the brand, the unsolicited media attention the brand has received, and the numerous awards won by KIND bars.  As a result of these marketing efforts and publicity, sales of KIND bars have risen exponentially since the product's launch.  Lubetzky Decl. ¶¶ 14 - 16.  And, the

registration of the KIND trade dress is further evidence of the mark's strength and distinctiveness. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection.").

2.   *The New MOJO Bar Trade Dress Is Similar to the KIND Bar Trade Dress.*

The overall impression of the new MOJO bar trade dress closely – and intentionally – mirrors that of KIND bars.  The two packages look highly alike because

 

Clif has copied the arrangement of key elements comprising the KIND trade dress. Superficial differences in the details of the products' packaging, such as moving the offset vertical black band from the right to the left or placement of the small CLIF house mark so far to the extreme left edge of the package that it will frequently not appear on the forward-facing plane of the product packaging, are immaterial given that the respective packages convey the same overall impression.  *See Gross v. Bare Escentuals Beauty, Inc.*, 641 F. Supp. 2d 175, 195 (S.D.N.Y. 2008) ("While the parties' trade dress is not identical, the similarities in the appearance in the parties' packaging are significant, especially since their products are sold through the same channels of trade."); *see also Paddington*, 996 F.2d at 586 (minor differences in details held insignificant when "[e]ach label's lettering style, layout, and coloration, taken together, convey the same impression").

3.      *The New MOJO Bar Trade Dress Was Developed in Bad Faith.*

Bad faith may be inferred on the basis of "prior knowledge [of plaintiff's mark] . . . accompanied by similarities so strong that it seems plain that deliberate copying has occurred." *Paddington*, 996 F.2d at 587. "When a second comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion." *Majestic Drug*, 1997 WL 37955, at *9.

On its face, the new MOJO bar design is so strikingly similar to that of KIND bars that the choice of trade dress cannot have been a coincidence. *See Clinique Labs,* 945 F. Supp. at 555 ("The overall appearance of the two lines of products is too similar even to entertain the idea that [defendant] did not mimic [plaintiff's] mark and dress."); *see also Paddington*, 996 F.2d at 587 ("Where . . . prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, we have upheld findings of bad faith."). Clif's bad faith is further evidenced by the drastic departure from the trade dress of its other products. For example, as shown below, the trade dress of Clif's staple Clif Bar looks nothing like the new MOJO Bar packaging, nor does the new trade dress bear any resemblance to either Clif's KIT'S ORGANIC FRUIT & NUT BAR trade dress or its discontinued NECTAR ORGANIC FRUIT & NUT BAR trade dress.





In fact, the evolution of the MOJO trade dress reflects a series of steps obviously designed to come closer and closer to the trade dress of KIND bars, while simultaneously moving farther and farther away from design elements that would associate the product with the Clif brand.  Over these iterations, Clif has abandoned the opaque paper wrapper it has used on all of its other products, abandoned use of the rock-climbing figure that is a distinctive marker of the Clif brand and even downplayed the Clif name (which has become smaller and less prominent with each iteration of the MOJO packaging).  In sum, the new MOJO bar packaging downplays the MOJO bar's connection to the prior MOJO brand and the Clif family of products as a whole, while mimicking the packaging of the directly competing KIND product (see this evolution from left to right below).

   

This is evidence of intentional copying.  *See P3 Int'l v. Weitech, Inc.*, No. 99 Civ. 5941 (KMW), 1999 WL 1020249, at *6 ( "Also evidence of defendant's copying is that defendant has modified its product at least twice since the time it entered the market in

ways that make it more like plaintiff's . . . .").  In addition, KIND believes that expedited discovery into the design process for the new Clif MOJO trade dress will show that the designers were aware of the KIND trade dress, and expressly had the KIND trade dress in mind, when they designed this new trade dress.

As the developer of a radically new trade dress, Clif had an affirmative duty to avoid adopting a trade dress that is confusingly similar to the KIND trade dress.  *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987) ("[T]he second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer."); *accord Toy Mfrs. of Am., Inc. v. Helmsley-Spear, Inc.*, 960 F. Supp. 673, 681 (S.D.N.Y. 1997).  Clif's decision to do the opposite evidences a deliberate attempt to cause, and take advantage of, consumer confusion.

4.    *KIND Bars and MOJO Bars Are Situated Identically in the Market.*

The new MOJO bars will compete directly with KIND products in the exact same channels of commerce.  MOJO bars are currently sold side by side with KIND bars in the snack, nutrition and energy bar sections of health food stores, grocery stores, convenience stores, gourmet shops and other outlets where KIND bars are sold.  There is no reason to believe that this will change as the new trade dress is launched.  Lubetzky Decl. ¶ 26.

Indeed, Clif clearly intends for its new formulation of MOJO bars to compete directly with KIND bars; so directly, in fact, as to now largely mimic popular KIND ingredient combinations (*see* images on following page).  To infer such an intent, one

need look no further than Clif's new "Dark Chocolate Almond Sea Salt" bar, obviously a direct copy of KIND's best-selling "Dark Chocolate Nuts & Sea Salt" bar.  Indeed, all of Clif's new MOJO bars copy a successful KIND bar flavor:

| **KIND Flavor** | **New Clif MOJO Flavor** |
| --- | --- |
| Dark Chocolate Cherry Cashew | Dark Chocolate Cherry Almond |
| Blueberry Pecan | Wild Blueberry Almond |
| Almond & Coconut | Coconut Almond Peanut |
| Cranberry Almond | Cranberry Almond |
| Dark Chocolate Nuts & Sea Salt | Dark Chocolate Almond Sea Salt |

Similarly, Clif's MOJO bars prominently contain the new claim that they are "Gluten Free," long a core distinguishing attribute of KIND bars, pulling the new MOJO bars into even more direct competition for KIND customers.



These facts strongly favor KIND's application and support a finding of confusion. *See Paddington*, 996 F.2d at 586; *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 218 (2d Cir. 2003).

     5.    *Purchasers of Healthy Snack Bars Are Not Highly Trained or Particularly Sophisticated.*

Relatively low-cost snack items, including KIND bars and MOJO bars (about $2 per bar), are often impulse purchases, placed near a store's checkout counter or at the end of aisles in grocery stores. Lubetzky Decl. ¶ 28. As courts have long recognized, confusion is likely where directly-competitive products, often sold at low prices as an impulse purchase, share a similar trade dress. That is because consumers of these products are more likely to rely on signals of familiarity contained in a product's trade dress and are unlikely to exercise a great deal of care to ensure the source of the product before making a purchase, risks that are particularly acute where a competitor seeks to mimic so many of the signals consumers use as shortcuts in identifying a favored brand. *See Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 220 (2d Cir.1999) ("Purchasers of relatively inexpensive goods . . . are held to a lesser standard of purchasing care."), *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003); *Time Inc. Magazine Co. v. Globe Commc'ns Corp.*, 712 F. Supp. 1103, 1110-11 (S.D.N.Y. 1989) (confusion more likely where consumers are "impulse" shoppers who make quick purchase decisions based on the overall impression of the product); *Majestic Drug*, 1997 WL 37955, at *11 (confusion more likely as to "impulse-buy items").

6.     *KIND Cannot Control the Quality of MOJO Bars.*

Where the senior user's reputation could be tarnished by the poorer quality of the junior user's product, this factor also favors the senior user.  *See Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 483 (2d Cir. 1996).

The newly formulated MOJO bars will be new to the market and there is not yet any information regarding their quality.  However, KIND has no means of controlling the quality of Clif's product, nor can it be assured that Clif will position the new MOJO product as its highest quality offering in this market segment.  Currently Clif's KIT'S ORGANIC FRUIT & NUT BAR product sells at a premium over its MOJO line. Positioning the new MOJO product as a down-market, lower quality offering that happens to strikingly resemble a growing competitor's upscale product, would obviously tarnish KIND's reputation.  In light of KIND's lack of control over Clif's current or future positioning of the MOJO product, there is a real risk that customers who are confused as to the source of the MOJO bar and who do not like the quality of the MOJO bar may turn away from KIND products altogether.

7.     *KIND Has Direct Evidence of a Likelihood of Confusion.*

A showing of actual confusion in the marketplace is not required given how difficult it can be to uncover evidence of actual confusion.  *See Hasbro*, 858 F.2d at 78. That is especially true in cases, like this one.  *Andy Warhol Enters., Inc. v. Time Inc.*, 700 F. Supp. 760, 766 (S.D.N.Y. 1988) (when product is "new," absence of confusion is not viewed as probative).  Thus, even in the absence of any evidence of confusion, a

preliminary injunction may still properly be entered if the other *Polaroid* factors support a finding that confusion is likely.

Here, the likelihood of such confusion is not merely theoretical.  That is because KIND has commissioned a consumer perception survey, which has shown that confusion is in fact likely to occur.  *See Caché, Inc. v. M.Z. Berger & Co.*, No. 99 Civ. 12320 (JGK), 2001 WL 38283, at *10-11 (S.D.N.Y. Jan. 16, 2001).

KIND's survey was conducted by George Mantis, an experienced survey expert who has submitted surveys in other trade dress cases in this Court that resulted in the entry of provisional relief.  *E.g.*, *U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 532-36 (S.D.N.Y. 2011) (preliminary injunction); *EnergyBrands*, 2002 WL 826814, at *2 (TRO).  As detailed in Mr. Mantis's accompanying declaration, his survey in this case closely followed the methodology used and accepted by this Court in those prior cases.  *See EnergyBrands*, 2002 WL 826814, at *2 (crediting results of similar Mantis survey as "modeled after other court-approved studies for evaluating trade dress confusion for items sold in grocery stores").  Like his surveys in other cases, Mr. Mantis's survey in this case was a rigorous, highly controlled, double-blinded consumer survey designed to measure the extent to which the specific trade dress elements copied by Clif are causing confusion.

Mr. Mantis conducted his survey between January 22 and 31, 2014, with 306 potential purchasers of snack bars.  As detailed in his declaration, he concludes that an appreciable percentage of relevant consumers are highly likely to mistakenly believe that the new MOJO bar is the same brand as, or is made by the same company as, KIND bars,

and that this mistaken belief is caused specifically by the similarities between the products' respective trade dress.

The Mantis survey indicated that 26% of consumers were confused by the MOJO bar trade dress. However, Mr. Mantis went further; he employed a scientific survey design using a control cell to eliminate survey "noise" so that he could arrive at an even closer estimate of actual confusion. In the control cell, Mr. Mantis used the original Clif MOJO trade dress, so that he could measure scientifically the extent to which the change in the Clif MOJO trade dress is specifically causing consumers to believe the new MOJO bars come from KIND. When the gross percentage is adjusted for the number of relevant responses in the control cell, the "net" confusion found by Mr. Mantis is 15%. Confusion rates at this level are routinely accepted by this Court and others as direct evidence of a likelihood of confusion. *See, e.g.*, *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399 (RWS), 2004 WL 602295, at *26 & *44 (S.D.N.Y. Mar. 26, 2004) (confusion rate of 15%–21% even without a scientific control indicates a likelihood of confusion), *rev'd on other grounds*, 399 F.3d 462 (2d Cir. 2005); *Goya Foods, Inc. v. Condal Distribs., Inc.*, 732 F. Supp. 453, 457 (S.D.N.Y. 1990) (10% net confusion rate "meaningful evidence" warranting grant of preliminary injunction); *RJR Foods, Inc. v. White Rock Corp.*, No. 77 Civ. 2329, 1978 U.S. Dist. LEXIS 15080, at *8-*9 (S.D.N.Y. Oct. 6, 1978) (15%–20% rate supported finding of a likelihood of confusion), *aff'd.* 603 F.2d 1058, 1061 (2d Cir. 1979); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F. Supp. 707, 716 (S.D.N.Y. 1973) (7.7% rate of confusion regarding business connection and 8.5% rate of confusion regarding names was "strong

evidence" of likelihood of confusion supporting permanent injunction), *aff'd.* 523 F.2d 1331 (2d Cir. 1975); *see also Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 401 (8th Cir. 1987) (affirming district court issuance of permanent injunction and its grant of "significant weight" to survey results showing 10% rate of confusion); *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 507 (5th Cir. 1980) (reversing district court's refusal to modify permanent injunction for, *inter alia*, failing to credit survey results showing a 15% rate of confusion); *James Burrough, Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 279 (7th Cir. 1976) (reversing district court's directed verdict for refusing to credit survey results showing 15% rate of confusion).  In a market segment with retail sales well over $500 million annually, it cannot be said that confusion at a rate of 15% is anything but substantial.

The verbatim responses by respondents in the Mantis survey confirm that respondents were specifically confused by the design of the Clif MOJO trade dress. Those consumers who indicated that they believed the new Clif MOJO bars came from KIND were asked "What makes you say that?"  Among their explanations were the following:

- "I can see the labels.  I am not brain dead."

- "Same or similar packaging as the earlier snack bars."

- "Very similar packaging."

- "They look the same."

- "The same package."

- "It looks just like the KIND bars I saw earlier."

These qualitative answers reinforce the quantitative survey results, and further support the conclusion that the new Clif MOJO trade dress is likely to cause confusion.

III.   **KIND Is Likely to Suffer Irreparable Harm.**

To satisfy the requirement of irreparable harm, a plaintiff must show that, without preliminary injunctive relief, it will suffer imminent injury "that cannot be remedied if a court waits until the end of the trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). KIND is entitled to a presumption of irreparable harm in light of its showing of a likelihood of confusion. *See Hasbro*, 858 F.2d at 73.[2]

KIND need not, however, rely on this presumption. Various media outlets are already reporting on the new MOJO product and Clif has already begun selling to major retailers. Lubetzky Decl. ¶¶ 31 - 33. If this Court does not enjoin the new MOJO bar's trade dress, KIND will suffer real and irreparable harm in the form of lost goodwill and market share as customers are confused into buying MOJO bars when they mean to buy

---

[2]   The Second Circuit has suggested in *dicta* that the Supreme Court's holding in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), may have abrogated the presumption of irreparable harm "for injunctions in any context." *Salinger v. Colting*, 607 F.3d 68, 78 (2d Cir. 2010). But the Circuit has not overruled *Hasbro* and has not held that the presumption no longer applies in Lanham Act cases. *See U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 511 F. App'x 81, 85 (2d Cir. 2013) ("We need not here decide whether a presumption of irreparable harm from trademark infringement can apply in light of [*eBay*] and [*Salinger*] because no such presumption was applied here."). To the contrary, there are good reasons to believe that the presumption should and does still apply in Lanham Act cases. *See* David H. Bernstein & Andrew Gilden, *No Trolls Barred:  Trademark Injunctions after eBay*, 99 Trademark Rep. 1037 (2009).

KIND bars.  The millions of dollars KIND has invested in KIND bars and the KIND brand will be usurped, the franchise will be diluted by the introduction of Clif's similarly packaged product, and KIND's ability to use its trade dress effectively in new markets and to attract new customers will be hampered.  No later action by this Court could restore consumers' goodwill toward the KIND trade dress once it has been destroyed by Clif's actions.  *See U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 511 F. App'x 81, 85 (2d Cir. 2013) (holding that district court finding that "PRL would be irreparably harmed by ceding to USPA control over its reputation and goodwill" was sufficient for a permanent injunction and "not simply the product of a legal presumption"); *Audemars Piguet Holding*, 2014 WL 47465, at *24 ("[I]n light of the likelihood of confusion between the Royal Oak watch and Defendants' Trimix watches, without a permanent injunction, the reputation and goodwill cultivated by the senior brand would be out of its hands.") (internal quotation marks and brackets omitted); *Quaker Oats Co. v. Mel Appel Enters., Inc.*, 703 F. Supp. 1054, 1061 (S.D.N.Y. 1989) (irreparable harm from continued infringement since "other manufacturers would have less incentive to refrain from selling infringing products").  Nor will any later action by this Court be able to reverse the damage caused by Clif's introduction of its product into portions of the U.S. market beyond the current reach of the rapidly expanding KIND brand.  *See generally* Lubetzky Decl. ¶¶ 30 - 35.

Accordingly, this Court has overwhelmingly sufficient evidence to warrant issuance of a preliminary injunction against Clif's infringement of the KIND trade dress.

IV.  **KIND Also Satisfies the Alternate Standard for a Preliminary Injunction.**

KIND also is entitled to a preliminary injunction because it can show that (1) serious questions exist going to the merits of its case and that these questions are fair ground for litigation, and (2) the balance of hardships tips in its favor.  *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 113-14 (2d Cir. 2006).

For the reasons discussed above, KIND has shown a convincing likelihood of success on the merits.  It certainly has raised substantial objections and questions that are fair ground for litigation.

The balance of hardships also weighs in KIND's favor.  As discussed above, if no injunction is issued, KIND will suffer significant, irreparable harm.

By contrast, Clif does not stand to lose nearly as much if the injunction is issued.  The MOJO line is not Clif's only, or even primary, product offering.  At this time, Clif is currently marketing its MOJO product in unchallenged trade dress.  While Clif obviously intends to begin marketing a MOJO product that is itself more similar to the KIND product, Clif could still sell the new MOJO product by simply offering it in the packaging currently used for the MOJO line or any of the previous iterations of MOJO packaging.  Clif knew of KIND's prior rights in the KIND trade dress when it designed its packaging for its new MOJO bars; as the junior entrant, it accepted the risk that its product could be the subject of litigation.  *See Fun-Damental Too*, 111 F.3d at 1005 (preliminary injunction would "not place an undue burden on . . . the junior market entrant" since new entrant is free to sell in non-infringing trade dress).  Clif cannot claim any surprise or prejudice arising from KIND's entirely predictable assertion of its rights.

Finally, the public interest favors injunctive relief.  The public interest is served by preventing customer confusion or deception.  Where the likelihood of confusion is present, as is the circumstance here, "the public interest would be served by the issuance of an injunction." *U.S. Polo Ass'n, Inc.*, 800 F. Supp. 2d at 541.

V.     **Expedited Discovery Is Appropriate.**

Courts routinely grant limited expedited discovery in Lanham Act cases where, as here, a defendant is engaging in acts that may deceive or mislead the public and irreparable injury is likely to flow from such conduct.  *See, e.g.*, *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841 (RWS), 1997 U.S. Dist. LEXIS 15957, *58 (S.D.N.Y. July 18, 1997) ("[S]uch discovery is routinely granted in actions involving infringement and unfair competition.").

KIND has already gathered sufficient evidence of the likelihood of confusion to justify entry of a preliminary injunction.  However, KIND requests the opportunity to take limited, targeted expedited discovery likely to further illuminate issues relevant to the Court's consideration of the injunction application.  Specifically, KIND requests production of documents that (1) relate to the development or design of the new Clif MOJO trade dress depicted above at page 2, including but not limited to any design briefs, earlier iterations of the design, and comparative research, and/or (2) refer in any way to KIND during a period encompassing the development or design of the new Clif MOJO trade dress depicted above at page 2.  The request is narrowly tailored to critical issues in this case, and therefore will not unduly burden Clif.  KIND is prepared to

similarly respond to targeted expedited discovery requests from Clif for documents concerning the design of the KIND trade dress.

<u>**CONCLUSION**</u>

For the foregoing reasons, plaintiff KIND respectfully requests that this Court grant its application for expedited discovery and a preliminary injunction preventing Clif from marketing and selling its new MOJO bar product in a trade dress that is confusingly similar to that of KIND bars.

Dated: New York, New York
       February 10, 2014

Respectfully submitted,
DEBEVOISE & PLIMPTON

By:
    David H. Bernstein (dhbernstein@debevoise.com)
    Jyotin Hamid (jhamid@debevoise.com)
    Charles W. Baxter (cwbaxter@debevoise.com)
919 Third Avenue
New York, New York 10022
(212) 909-6696

*Attorneys for Plaintiff KIND LLC*